**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| RONELL X. WILLIAMS, | ) | 3:07-CV-00391-ECR (RAM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | **OF U.S. MAGISTRATE JUDGE** |
| | ) | |
| HOWARD SKOLNICK, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion to Dismiss (Doc. #7). Plaintiff opposed the motion (Doc. #12) and Defendants did not reply.

Both parties submitted matters outside the pleadings, including exhibits and affidavits, in support of and in opposition to the instant motion; thus, both parties have had a reasonable opportunity to present all material relevant to a motion for summary judgment. This Report and Recommendation considers all matters submitted by both parties; therefore, the instant motion is treated as a motion for summary judgment in accordance with FED. R. CIV. PRO. 56.

## I. BACKGROUND

Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #4). At the time of the facts giving rise to his complaint, Plaintiff was a prisoner in High Desert State Prison (HDSP), in Indian Springs, Nevada also in the custody of NDOC (*Id.*). Plaintiff brings his complaint pursuant to 42 U.S.C.

§ 1983, alleging state officials violated his First Amendment right to the free exercise of religion and his Fourteenth Amendment right to equal protection (Doc. #4). Plaintiff names the following Defendants in their individual and official capacities: Glen Whorton, Dwight Neven, Isidro Baca, James G. Cox, and Chaplain Dave Casaleggio (*Id.*).

In Count I Plaintiff asserts violations of his First Amendment right to the free exercise of his religion and his Fourteenth Amendment right to equal protection (Doc #4 at 4-5). Plaintiff alleges Defendants Neven, Baca, Wallace and Casaleggio denied his special religious diet request pertaining to fasting during the month of December, which Plaintiff asserts the Nation of Islam (NOI) observes as the Ramadan (*Id.*). Plaintiff further alleges he filed grievances regarding the denial of a special religious diet and Defendants Neven and Cox denied his First and Second Level grievances (*Id.* at 5). Plaintiff then alleges he submitted a request to Defendant Whorton requesting the December Ramadan fast be honored, which Defendant Whorton denied (*Id.*). Next, Plaintiff alleges he submitted a Religious Faith Group Recognized Application to Defendant Casaleggio, which apparently was also denied (*Id.* at 7). Plaintiff asserts he is unable to exercise his religious beliefs as long as those beliefs are ascribed to the NOI (*Id.*). Plaintiff further asserts Defendants have a racial animus towards NOI members because they believe NOI members hate "white folks" and NOI members are predominately Black (*Id.*). Plaintiff alleges Defendants subjected him to unequal treatment in the form of requiring him to file a request to have his faith group recognized, labeling him as part of a security threat group (STG), and falsely considering him part of a gang because he is a member of the NOI (*Id.* at 8). Plaintiff contends that, despite Prison Reform Minister Derrick Muhammad's signed memo addressed to Defendant Neven and the office of Defendants Baca, Wallace and Morrow which purportedly provides the basis for the December fast and contact information, Defendants have refused to recognize NOI as a religion and, in so doing, have violated his constitutional rights (*Id.*).

In Count II, Plaintiff asserts a violation of his First Amendment right to the free exercise of his religion (*Id.* at 10). Plaintiff alleges Defendants have written him up for MJ-10 gang

2

1   affiliation violations and transferred him to a maximum security prison because of Plaintiff

2   practicing his religion (Doc. #4 at 10).  Plaintiff alleges Defendants do not make allotments

3   for any of his religious garments as they do other religious groups and Defendants show

4   favoritism to other religious sects by enforcing Administrative Regulations (AR) 810 and 814

5   in an arbitrary and capricious manner (*Id*. at 10-13).  Plaintiff further alleges Defendants

6   Whorton and Cox allow their subordinates to discriminate against Plaintiff and the NOI

7   because of NOI's "ideology that white people are Satan mentioned in the Bible and Holy

8   Quran." (*Id*. at 13).  Plaintiff contends Defendants Whorton and Cox have discriminatory

9   written practices, customs or policies, which allow other faith groups to have "spiritual

10  leaders" without classifying the inmates who practice in those groups as "militant or gang

11  affiliated." (*Id*.).

12      In Count III, Plaintiff asserts a violation of his First Amendment right to the free

13  exercise of religion (*Id*. at 14).  Plaintiff contends Defendants were required to provide him

14  with adequate meals before "dawn" and after sunset during the traditional Ramadan period

15  beginning October 5, 2005 through November 4, 2005 (*Id*.).  Plaintiff alleges Defendants

16  Neven, Baca, Wallace, Cassaleggio and Whorton did not make the proper arrangements to

17  have Plaintiff served his meals until after dawn or sunrise (*Id*.).  Plaintiff asserts the Ramadan

18  fast for the entire month was "qualitatively diminished" spiritually due to Defendants Neven,

19  Baca, Wallace, Whorton, Cox and Cassaleggio disdaining the integrity of the fast (*Id*. at 15).

20      Plaintiff requests the following relief: 1) compensatory damages; 2) punitive damages;

21  3) prospective damages; 4) special damages; 5) general damages; 6) a temporary restraining

22  order; 7) a permanent injunction; and 8) costs, fees and expenses (*Id*. at 35).

23                      **II.  STANDARD FOR SUMMARY JUDGMENT**

24      The purpose of summary judgment is to avoid unnecessary trials when there is no

25  dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

26  18 F.3d 1468, 1471 (9th Cir. 1994).  The moving party is entitled to summary judgment where,

27  viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

28

3

are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

4

1

### III.  DISCUSSION

2       Defendants moves for dismissal of Plaintiff's claims asserting Plaintiff lacks standing

3   to allege Ramadan issues and Plaintiff's complaint is moot because the NOI and the Islamic

4   religion now observe the same Ramadan (Doc. #7 at 8-9).  Defendants further move for

5   dismissal asserting Plaintiff failed to grieve the denial of his request to recognize NOI as a

6   religion, Defendants are entitled to Eleventh Amendment immunity, Defendants lacked

7   personal participation, and Defendants are entitled to qualified immunity (*Id*. at 9-14).

8       Plaintiff argues his complaint is not moot because NOI observes fasting during the

9   traditional Ramadan month and the entire month of December and Defendants' contention

10  that NOI changed its Ramadan schedule is untrue (Doc. #12 at 5).  Plaintiff also argues he

11  exhausted his administrative remedies with regard to his request to recognize NOI as a religion

12  and Defendants are not entitled to immunity (*Id*. at 6-9).

13  **A.    MOOTNESS (STANDING)**

14      "Mootness can be characterized as the doctrine of standing set in a time frame: The

15  requisite personal interest that must exist at the commencement of the litigation (standing)

16  must continue throughout its existence (mootness).  Mootness, like the related doctrine of

17  standing, restricts judicial power to the decision of cases and controversies, so that our elected

18  government retains the general power to establish social policy." *Cook Inlet Treaty Tribes v.*

19  *Shalala,* 166 F.3d 986, 989 (9th Cir. 1999) (internal quotations and citation omitted).  A case

20  is moot where no actual or live "case or controversy" exists. *Id.*  In other words, "[a] claim is

21  moot when 'the issues presented are no longer live or the parties lack a legally cognizable

22  interest in the outcome.'" *People of Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir.

23  1993) (citing *Western Oil & Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1290 (9th Cir. 1990),

24  *cert. denied*, 498 U.S. 1067 (1991)).  "The basic question is whether there exists a 'present

25  controversy as to which effective relief can be granted.'" *Id. (*citing *Northwest Environmental*

26  *Defense Center v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

27

28

1   Here, Defendants basically assert Plaintiff's claims are moot because NOI changed its

2   Ramadan schedule to the traditional Islamic Ramadan period and no longer requires fasting

3   in the month of December (Doc. #7 at 9).  To support this assertion, Defendants attach the

4   Affidavit of Defendant Cassaleggio, in which he states he called NOI headquarters in Chicago

5   and was informed NOI no longer requires fasting in the month of December, but rather follows

6   the traditional Muslim Ramadan schedule (Doc. #7, Exh. C).  Plaintiff vehemently disputes

7   this assertion and claims NOI follows both the traditional Muslim Ramadan and the December

8   Ramadan  (Doc. #12 at 5).

9   Other than the Affidavit of Defendant Cassaleggio, Defendants have provided no

10  evidence indicating NOI no longer requires its members to fast in December.  Furthermore,

11  Defendant Cassaleggio's Affidavit does not specify who at "headquarters" gave him such

12  information, nor does it state when said information was obtained.  As previously stated,

13  Plaintiff vehemently disputes Defendants' assertion and insists NOI members follow both

14  Ramadan schedules; therefore, there are genuine issues of material fact as to whether NOI

15  members are required to follow the December Ramadan.  Furthermore, as will be discussed

16  in detail *infra* under the qualified immunity analysis, there are genuine issues of material fact

17  as to whether Plaintiff holds a sincere religious belief that *he* must fast in December, which

18  precludes summary judgment on grounds of mootness.  Accordingly, Defendants' request for

19  summary judgment on grounds of mootness should be **DENIED**.

20  **B.   FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

21  The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect

22  to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

23  confined in any jail, prison, or other correctional facility until such administrative remedies

24  as are available are exhausted." 42 U.S.C. § 1997e(a).  The PLRA exhaustion requirement is

25  an affirmative defense that must be raised and proved by the defendant. *Wyatt v. Terhune*,

26  315 F.3d 1108, 1112 (9th Cir. 2003).  Exhaustion is mandatory; the district court is left with

27  no discretion. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

28

Prisoners must exhaust all "available" remedies. *Id.* Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but, rather, the PLRA requires "proper exhaustion." *Id.* at 93. "Proper exhaustion" is defined as "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 2385 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). This district court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": 1) the "merits test", which is satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and 2) the "compliance test", which is satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendant must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*[1]

Defendants assert Plaintiff failed to grieve the denial of his request to have NOI recognized by NDOC as a religion (Doc. #7 at 9). Plaintiff argues he did exhaust his administrative remedies regarding this issue (Doc. #12 at 6). Specifically, Plaintiff asserts he filed grievances through all levels specifically dealing with the denial of his Religious Faith Group Recognized Application requesting NDOC recognize NOI as a religion (*Id.* at 6-7).

---

[1] The Ninth Circuit has held that the failure to exhaust administrative remedies under the PLRA should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), *cert denied by Alameida v. Wyatt*, 540 U.S. 810 (2003). The Ninth Circuit reasoned that "[s]ummary judgment is on the merits," whereas "dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits." *Id.* In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* And, if the district court concludes that the prisoner has not exhausted his administrative remedies, the proper remedy is dismissal of the claim without prejudice. *Id.* at 1120. Thus, this Report and Recommendation, while treating Defendants' motion as a motion for summary judgment, treats Defendants' argument that Plaintiff failed to exhaust his administrative remedies as a request to dismiss without prejudice.

1    The record shows Plaintiff did, in fact, properly exhaust his administrative remedies

2    with respect to this issue.   Plaintiff attaches an Inmate Grievance Report, Issue ID#

3    20062640865, which details the grievances on each level and shows the grievance responder

4    responding at Level II stating : "I agree with the response given at the informal and 1st level."

5    (Doc. #12 at 12).   The responses given on each level deal directly with the faith groups

6    recognized by NDOC and listed in AR 810 and the denial of NOI as one of those faith groups

7    (*Id.*).   Accordingly, Defendants' request to dismiss  Plaintiff's claim dealing with the denial

8    of his Religious Faith Group Recognized Application should be **<u>DENIED</u>**.

9    **C.    ELEVENTH AMENDMENT IMMUNITY**

10    The Eleventh Amendment bars suits for money damages in federal court by a citizen

11    against a state or its agencies unless the state has waived such immunity or Congress has

12    abrogated such immunity by statute. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).

13    Thus, Defendants correctly assert that to the extent the Plaintiff's claims against them in their

14    official capacities are for money damages, no claim will lie.   However, Plaintiff also requests

15    injunctive relief against Defendants in their official capacities and a federal court's remedial

16    power, consistent with the Eleventh Amendment, includes prospective injunctive relief. *Quern*

17    *v. Jordan*, 440 U.S. 332, 338 ("a federal court, consistent with the Eleventh Amendment, may

18    enjoin state officials to conform their future conduct to the requirements of federal law...").

19    Although Defendants assert Plaintiff's request for injunctive relief is moot because NOI

20    now follows the traditional Muslim holidays, as previously stated, there are genuine issues

21    of material fact as to whether NOI requires its members to follow the December Ramadan,

22    as well as genuine issues of material fact as to whether Plaintiff sincerely believes he must

23    follow the December Ramadan.   Accordingly, to the extent Plaintiff is suing Defendants in

24    their official capacities for prospective injunctive relief, the Eleventh Amendment does not

25    bar Plaintiff's suit and dismissal of Defendants in their official capacities on Eleventh

26    Amendment immunity grounds should be **<u>DENIED</u>**.

27    ///

28                                                8

1

## D. **PERSONAL PARTICIPATION**

2      Liability under § 1983 arises only upon a showing of personal participation by the

3 defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th

4 Cir. 1989). There is no respondeat superior liability under § 1983. *Jones v. Williams*, 297 F.3d

5 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (rejecting

6 the concept of respondeat superior liability in the section 1983 context and requiring

7 individual liability for the constitutional violation); *Taylor v. List*, 880 F.2d 1040, 1045 (9th

8 Cir. 1989) (requiring personal participation in the alleged constitutional violations); *May v.*

9 *Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (holding that section 1983 liability must be based

10 on the personal involvement of the defendant)); *see also Ybarra v. Reno Thunderbird Mobile*

11 *Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

12      A supervisor is only liable for constitutional violations of his subordinates if the

13 supervisor participated in or directed the violations, or knew of the violations and failed to

14 act to prevent them. *Taylor*, 880 F.2d at 1045.  In other words, a supervisor may be liable

15 under § 1983 only if there exists either "'(1) his or her personal involvement in the

16 constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's

17 wrongful conduct and the constitutional violation.'" *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th

18 Cir. 2001) (internal citations omitted) (emphasis in original).

19      Defendants assert Defendants Skolnik and McDaniel are not mentioned in the body

20 of the complaint; Defendants Baca and Wallace are not specifically implicated; Defendants

21 Whorton and Cox merely affirmed denials of Plaintiff's grievances; Defendant Neven noted

22 NOI's Ramadan would not receive special feeding arrangements; and Defendant Cassaleggio

23 merely gave Plaintiff the bad news (Doc. #7 at 13).

24 ///

25 ///

26 ///

27 ///

28

### 1.    **Defendant Skolnik**

Plaintiff failed show any personal participation on the part of Defendant Skolnik.[2]

### 2.    **Defendant McDaniel**

Plaintiff failed to show any personal participation on the part of Defendant McDaniel.

### 3.    **Defendant Whorton**

Defendant Whorton specifically addressed Plaintiff's grievances on November 21, 2005, agreeing that his grievances were appropriately answered on all levels (Doc. #4 at 27). Presumably, he personally reviewed the grievances and agreed with or acquiesced in the responses given.

### 4.    **Defendant Cox**

Defendant Cox denied Plaintiff's Level 2 grievance regarding recognizing NOI as a religion, stating NOI is a political organization and not a recognized faith group (*Id*. at 28).

### 5.    **Defendant Baca**

Defendant Baca received a copy of a memorandum issued by Defendant Neven on September 2, 2005 addressed to Plaintiff specifically stating NDOC will not be recognizing the December Ramadan fast (*Id*. at 19).  Viewing the evidence in the light most favorable to Plaintiff, this memorandum indicates Defendant Baca played a role in the decision and agreed with the response given.

### 6.    **Defendant Wallace**

Defendant Wallace also received a copy of the memorandum issued by Defendant Neven on September 2, 2005 addressed to Plaintiff specifically stating NDOC will not be recognizing the December Ramadan fast (*Id*.).  Again, viewing the evidence in the light most favorable to Plaintiff, this memorandum indicates Defendant Wallace played a role in the decision and agreed with the response given.

---

[2] The court notes Plaintiff does not appear to challenge AR 810 as unconstitutional on its face, in which case Defendant Skolnik, as Director of NDOC, would have the requisite personal participation as a promulgator of the allegedly unconstitutional regulation.  Plaintiff appears to merely allege Defendants at HDSP enforce AR 810 in an arbitrary and capricious manner (Doc. #4 at 10-14).

### 7.    **Defendant Neven**

Defendant Neven personally issued the September 2, 2005 memorandum specifically stating NDOC will not be recognizing the December Ramadan fast (Doc. #4 at 19).

### 8.    **Defendant Cassaleggio**

Defendant Cassaleggio informed Plaintiff's caseworker that NOI is not a recognized religious sect, as well as purportedly called Chicago headquarters to determine whether NOI members were required to follow the December Ramadan (*Id.* at 31; Doc. #7, Exh. C). Apparently, based on information he received from NOI headquarters, Defendant Cassaleggio determined Plaintiff was not required to follow the December Ramadan.

Construing the complaint liberally and viewing the facts and the evidence in the light most favorable to him, Plaintiff has shown personal participation on the part of Defendants Whorton, Cox, Baca, Wallace, Neven and Cassaleggio.  Plaintiff has not shown personal participation on the part of Defendants Skolnik and McDaniel.  Accordingly Defendants' request to dismiss Defendants Whorton, Cox, Baca, Wallace, Neven and Cassaleggio for lack of personal participation should be **DENIED**.  Defendants' request to dismiss Defendants Skolnik and McDaniel should be **GRANTED**.

### E.    QUALIFIED IMMUNITY

"Qualified immunity protects government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007).  Under certain circumstances state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 879 (9th Cir. 2002).  When a state official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay,* 272 F.3d 1207, 1214 (9th Cir. 2001).  Where "the law did not put the officer on notice that his conduct

11

1 | would be clearly unlawful, summary judgment based on qualified immunity is appropriate."
2 | *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

3 | In analyzing whether the defendant is entitled to qualified immunity, the court must
4 | consider two issues. First, the court must make a threshold inquiry into whether the Plaintiff
5 | alleges deprivation of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 736 (2000); *Saucier,*
6 | 533 U.S. at 201. If no constitutional violation occurred, the court need not inquire further.
7 | *Saucier*, 533 U.S. at 201. If a constitutional violation did occur then the court must next
8 | establish whether the right was clearly established at the time of the alleged violation such
9 | that the official could have reasonably, but mistakenly, believed that his or her conduct did
10 | not violate a clearly established right. *Id*. at 202.

11 | The crux of Plaintiff's complaint centers around Defendants' denial of Plaintiff's
12 | religious request for special diet arrangements to observe the December Ramadan fast in
13 | December, 2005; Defendants' denial of Plaintiff's Religious Faith Group Application
14 | recognizing NOI as a religion; Defendants' alleged retaliatory actions against Plaintiff for
15 | practicing his NOI religious belief, e.g., MJ-10 charges and transfer to maximum security
16 | prison; Defendants' refusal to make allotments for Plaintiff's religious garments, e.g. bowties;
17 | and Defendants' failure to provide timely "pre-dawn" meals during the traditional month of
18 | Ramadan recognized by all Muslims beginning October 5, 2005 through November 4, 2005
19 | (Doc. #4).

20 | **1.    First Amendment Right to Free Exercise of Religion**

21 | "The right to exercise religious practices and beliefs does not terminate at the prison
22 | door. The free exercise right, however, is necessarily limited by the fact of incarceration, and
23 | may be curtailed in order to achieve legitimate correctional goals or to maintain prison
24 | security. *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations
25 | omitted). "In order to establish a free exercise violation, [the prisoner] must show the
26 | defendants burdened the practice of his religion … by preventing [the prisoner] from engaging
27 | in conduct mandated by his faith." *Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997).

28 |

1    A First Amendment religious claim must satisfy two (2) requirements to merit

2    protection: 1) the claimant's belief must be "sincerely held;" and 2) "the claim must be rooted

3    in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330,

4    333 (9th Cir. 1994) (citations and quotations omitted).  To prove a free exercise of religion

5    violation, the claimant must demonstrate officials burdened the practice of his sincerely held

6    religious beliefs "by preventing him from engaging in conduct mandated by his faith, without

7    justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125

8    F.3d 732, 736 (9th Cir. 1997) (citing *Turner*, 482 U.S. at 89).

9                              a.    Ramadan meals (December and Traditional)

10    Defendants essentially argue that they did not violate Plaintiff's First Amendment rights

11   by denying Plaintiff's special diet request pertaining to the December Ramadan because NOI

12   is not a recognized religion and Plaintiff had alternate means of exercising his NOI beliefs

13   (Doc. #7 at 16).  Defendants did not address Plaintiff's allegation that they also denied him

14   the opportunity to effectively participate in the traditional Ramadan from October 5, 2005

15   through November 4, 2005, practiced by all Muslims, by serving the pre-dawn meals late.

16    It is clearly established law in the Ninth Circuit that inmates have a constitutional right

17   to "food sufficient to sustain them in good health that satisfies the dietary laws of their

18   religion." *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997); *Ward v. Walsh*,

19   1 F.3d 873, 876 (9th Cir. 1992); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  Under

20   established law, prison authorities must generally accommodate the rights of prisoners to

21   receive a diet consistent with their religious beliefs. *Id*.  "The free exercise right, however, is

22   necessarily limited by the fact of incarceration, and may be curtailed in order to achieve

23   legitimate correctional goals or to maintain prison security." *Id*. (citing *O'Lone v. Shabazz*,

24   482 U.S. 342, 348 (1987).

25    Defendants are correct that *Turner v. Safley*, 482 U.S. 78, 89 (1987) provides the test

26   for balancing these interests by setting forth four (4) factors to be considered in determining

27   when a regulation is reasonably related to a penological interest; however, the court need not

28                                        13

1   address the *Turner* factors because Defendants failed to put forth any legitimate penological

2   interest with respect to Plaintiff's request for the Ramadan meals.  In analyzing the *Turner*

3   factors, Defendants set forth general penological interests of safety, security, budget

4   restrictions and staffing limitations for denying NOI separate services and other

5   accommodations and not recognizing NOI as a religion (Doc. #7 at 16-17).  Defendants did

6   not specifically address Plaintiff's request for a special diet during the December Ramadan

7   or his request to correct the late delivery of the pre-dawn meals served during the traditional

8   Ramadan.  Defendants' broad generalizations and allegations with respect to NOI as a whole

9   are insufficient to set forth legitimate penological interests for denying Plaintiff's request for

10  the Ramadan meals.

11       The Supreme Court has held that a Free Exercise claimant need not be a member of

12  a particular organized religious denomination to show sincerity of his religious belief. *Frazee*

13  *v. Illinois Dept. of Employment Sec.*, 489 U.S. 829 (1989) (Court found refusal to work on

14  Sundays a sincerely held religious belief where appellant asserted he was Christian, but did

15  not claim to be a member of a particular Christian sect, and did not claim his refusal to work

16  on Sundays resulted from a "tenet, belief or teaching of an established religious body."); *see*

17  *also Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (holding the sincerity test

18  determines whether the Free Exercise Clause applies).  The Court stated that "[w]hile

19  membership in a sect would simplify the problem of identifying sincerely held beliefs, the

20  notion that one must be responding to the commands of a particular religious organization

21  to claim the protection of the Free Exercise Clause is rejected." *Frazee*, 489 U.S. at 829.

22  Additionally, courts may not inquire into the truth of a prisoner's belief, nor may the court

23  limit protected beliefs to those shared by all members of a religious sect. *United States v.*

24  *Ballard*, 322 U.S. 78, 87 (1944).  The inquiry is "not definitional, but devotional," and

25  evaluates whether the beliefs are "held with the strength of traditional religious convictions."

26  *United States v. Ward*, 989 F.2d 1015, 1018 (9th Cir. 1992). "[W]hile practice or nonpractice

27  of a particular tenet of a religion may be relevant to sincerity, it is not conclusive." *Moster v.*

28

1   *Maynard*, 937 F.2d 1521, 1523 (9th Cir. 1991) (citing *Reed v. Faulkner*, 842 F.2d 960, 963

2   (7th Cir.1988)).

> 3   To merit protection under the free exercise clause of the First Amendment, a
>     religious claim must satisfy two criteria. "First, the claimant's proffered belief
> 4   must be sincerely held; the First Amendment does not extend to 'so-called
>     religions which … are obviously shams and absurdities and whose members are
> 5   patently devoid of religious sincerity.'" Callahan v. Woods, 658 F.2d 679, 683
>     (9th Cir.1981) (quoting Theriault v. Carlson, 495 F.2d 390, 395 (5th Cir.), cert.
> 6   denied, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974)). Second, "the claim
>     must be rooted in religious belief, not in 'purely secular' philosophical
> 7   concerns." Id. (citing Wisconsin v. Yoder, 406 U.S. 205, 215-16, 92 S.Ct. 1526,
>     1533, 32 L.Ed.2d 15 (1972)); Johnson v. Moore, 948 F.2d 517, 520 (9th Cir.1991)
> 8   (claims must be religious in nature). Determining whether a claim is "rooted
>     in religious belief" requires analyzing whether the plaintiff's claim is related to
> 9   his sincerely held religious belief. Callahan, 658 F.2d at 683-84.

10  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

11        Under these facts, Defendants' recognition (or non-recognition, rather) of NOI as a

12  "religion" is not dispositive on the issue of whether they violated Plaintiff's Free Exercise rights

13  by denying his request for a special religious diet and denying or ignoring his requests to

14  timely deliver the meals associated with his special religious diet.  Defendants were required

15  to determine whether Plaintiff's belief that he must fast during the month of December and

16  required a special diet was a sincerely held religious belief.

17        Even construing Defendants' assertion – that all Muslims, including NOI members,

18  now observe only the traditional Ramadan – as true, Defendants were nevertheless required

19  to determine whether Plaintiff's beliefs that *he* must follow the December Ramadan is held

20  with the strength of traditional religious convictions.  *The court may not limit protected*

21  *beliefs to those shared by all members of a religious sect. Ballard*, 322 U.S. at 87 (emphasis

22  added).  And, as the Supreme Court long ago found: "With man's relations to his Maker and

23  the obligations he may think they impose, and the manner in which an expression shall be

24  made by him of his belief on those subjects, no interference can be permitted, provided always

25  the laws of society, designed to secure its peace and prosperity, and the morals of its people,

26  are not interfered with." *Ballard*, 322 U.S. at 87 (citing *Prince v. Massachusetts*, 321 U.S. 158

27  (1944)).

28                                              15

1   The court is not saying Defendants are required to accommodate every individual

2   inmate's special religious diet request where the inmate holds a sincerely held religious belief,

3   as there may be legitimate penological interests for not doing so.  But, the court is saying, here,

4   Defendants have advanced none.  Defendants have also advanced no penological interest for

5   the late delivery of the pre-dawn meals during the traditional Ramadan.  Thus, under these

6   facts, Defendants' refusal to provide Plaintiff with a special diet during the December

7   Ramadan and Defendants' failure to timely provide Plaintiff with the pre-dawn meals during

8   the traditional Ramadan implicates the Free Exercise Clause if Plaintiff held a sincere belief

9   that he was personally required to fast during those months in order to maintain his

10  spirituality. *Shakur*, 514 F.3d 878. Accordingly, Defendants' request for summary judgment

11  on qualified immunity grounds with respect to the Ramadan meals should be **DENIED**.

12              b.   Religious garments

13  Plaintiff asserts he was denied religious garments associated with his NOI religion.

14  Apparently, Defendants denied Plaintiff's requests for religious garments for the same reasons

15  they denied the December Ramadan meals – they do not recognize NOI as a religion.  As

16  previously discussed, it is clearly established law that prisoners are entitled to accommodation

17  for their sincerely held religious beliefs where certain conduct is mandated by their religion

18  and the accommodation does not threaten a legitimate penological interest. *Freeman*, 125 F.3d

19  at 736.

20  Once again, there is no evidence in the record that Defendants made any inquiries into

21  whether Plaintiff's requested garments were part of *his* sincerely held religious beliefs and

22  Defendants advanced no legitimate penological interest for the alleged denial.  Instead, it

23  appears Defendants relied solely on their own determination that NOI was not a recognized

24  religion; therefore, Plaintiff was not entitled to any garments associated with NOI.  Without

25  addressing the constitutionality of Defendants' denial of NOI as a religion, Defendants do

26  advance legitimate penological justifications for the refusal to recognize NOI as its own

27  religious sect or to allow NOI members their own sect-specific services (Doc. #7 at 16-17).

28

16

1    Furthermore, the determination that NOI is not a religion is relevant to the determination

2    of whether Plaintiff's beliefs are "religious beliefs" and not merely "philosophical or personal

3    beliefs." However, Defendants did not address Plaintiff's actual claim of being denied religious

4    garments, nor did they inquire into the sincerity of *Plaintiff's* religious beliefs; they simply

5    argue NOI is not a recognized religion.

6            The fact that Plaintiff requests religious garments (or a special diet for that matter)

7    based on beliefs that are central to NOI does not, by itself, provide Defendants with a proper

8    basis for denying Plaintiff's requests if Plaintiff's requests are based on his sincerely held

9    religious beliefs. The Ninth Circuit recently recognized that the Supreme Court disapproves

10    of the "centrality test" and requires the "sincerity test" to determine whether the Free Exercise

11    Clause applies. *Shakur*, 514 F.3d at 885.[3] Thus, Defendants decision not to recognize NOI

12    as a religion is an insufficient basis, alone, to deny Plaintiff's requests for religious garments.

13    Defendants must determine if Plaintiff's requests are based on sincerely held religious beliefs,

14    and if they are, Defendants must have a legitimate penological interest for burdening those

15    "religious beliefs."

16            Under these facts, it appears Defendants denied Plaintiff's requests for religious

17    garments simply because they do not recognize NOI as a religion and Plaintiff's requests are

18    central to NOI. Because the law was clearly established at the time of the alleged conduct and

19    required Defendants to inquire into the sincerity of Plaintiff's religious beliefs, Defendants'

20    request for summary judgment on qualified immunity grounds with respect to the denial of

21    religious garments should be **<u>DENIED</u>**.

22    ///

23    ///

24

25          [3] "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of the particular litigants' interpretations of those creeds." *Shakur*, 514 F.3d at 884 (citing *Hernandez*

26    *v. C.I.R.,* 490 U.S. 680, 699 (1989)). "It is no more appropriate for judges to determine the 'centrality' of religious beliefs before applying a 'compelling interest' test in the free exercise field, than it would be for them to determine

27    the 'importance' of ideas before applying the 'compelling interest' test in the free speech field." *Id.* (citing *Employment Div., Dept. Of Human Resources of Oregon v. Smith*, 494 U.S. 872, 886-887 (1990)).

28                       17

1                                     c.      <u>Disciplinary Charges and Transfers</u>

2        Plaintiff asserts Defendants retaliated against him for practicing his religious beliefs

3  by writing him up for gang affiliation charges and transferring him to a maximum security

4  prison.

5        Transfers for the sole purpose of penalizing prisoners for certain religious beliefs is

6  unconstitutional and was clearly established law at the time of the alleged conduct. *Fajeriak*

7  *v. McGinnis*, 493 F.2d 468, 470 (9th Cir. 1974).  Bringing Plaintiff up on disciplinary charges

8  as a penalty to discourage certain religious beliefs is also clearly unconstitutional and was

9  clearly established law at the time of the alleged conduct. *Id*.

10        As previously explained, Defendants' decision not to recognize NOI as a religion does

11  not preclude Plaintiff from holding sincerely held religious beliefs central to NOI; thus, NOI

12  does not need to be a recognized religion within NDOC in order for Plaintiff to be retaliated

13  against for practicing his sincerely held beliefs associated with NOI.  Thus, viewing the facts

14  in the light most favorable to Plaintiff, if he was, in fact, brought up on charges and/or

15  transferred only because of actual or suspected religious activities (activities associated with

16  NOI that are religious in nature), he has stated a claim for relief and Defendants are not

17  entitled to qualified immunity for their alleged conduct. *Id*.; *see also Cooper v. Pate*, 378 U.S.

18  546, (1964); *Haines v. Kerner*, 404 U.S. 519 (1971).  Accordingly, Defendants' request for

19  summary judgment on qualified immunity grounds with respect to the alleged disciplinary

20  charges and transfer should be **<u>DENIED</u>**.

21                               d.      <u>Recognition of NOI as a religion</u>

22        Plaintiff asserts Defendants denied his request to have NOI recognized as a religion.

23  Defendants argue NOI is not a recognized religion because it has been linked to gang violence

24  and some sects have been deemed gangs and security threat groups (STGs) (Doc. #7 at 16).

25        While Defendants make only general allegations regarding NOI and do not assert that

26  all NOI members are linked to gang violence, gangs and STGs, or that Plaintiff has been linked

27  to gang violence, gangs or STGs, or even that NOI members at HDSP have been linked to gang

28  <center>18</center>

1    violence, gangs or STGs, they are nevertheless entitled to qualified immunity on this issue.

2    Neither the Ninth Circuit nor the Supreme Court have expressly found that NOI is, in fact,

3    a recognized religion.  And the Ninth Circuit holds that while "[i]t is impermissible to inquire

4    into the 'truth' of religious doctrines or beliefs…. [t]here is no prohibition, however, against

5    ruling whether or not a set of beliefs constitutes a religion when deciding if First Amendment

6    protections apply." *Jones v. Bradley*, 590 F.2d 294, 295 (9th Cir. 1979) (internal citations

7    omitted).

> Although a determination of what is a "religious" belief or practice entitled to
> constitutional protection may present a most delicate question, the very concept
> of ordered liberty precludes allowing every person to make his own standards
> on matters of conduct in which society as a whole has important interests. Thus,
> if the Amish asserted their claims because of their subjective evaluation and
> rejection of the contemporary secular values accepted by the majority, much as
> Thoreau rejected the social values of his time and isolated himself at Walden
> Pond, their claims would not rest on a religious basis. Thoreau's choice was
> philosophical and personal rather than religious, and such belief does not rise
> to the demands of the Religion Clauses.  One district court has stated that,
> although "(t)he task is . . . greatly simplified where an historically established
> and recognized religion such as Islam, Judaism or Catholicism is involved", a
> court "must initially determine whether or not a *religion or religious beliefs* are
> actually involved" in a case dealing with a free exercise question. Theriault v.
> Silber, 391 F.Supp. 578, 580 (W.D.Tex.1975).

16   *Wisconsin v. Yoder*, 406 U.S. 205, 215-216  (1974) (emphasis added).

17       Even if it is determined that NOI is, and should be, a recognized religion, that has not

18   been fleshed out in prior case law in this Circuit.  Thus, no reasonable official would have

19   known at the time of the conduct in question that denying Plaintiff's application to recognize

20   NOI as a religion would violate Plaintiff's constitutional rights.  Accordingly, Defendants'

21   request for summary judgment on qualified immunity grounds with respect to the denial of

22   Plaintiff's application to recognize NOI as a religion should be **<u>GRANTED</u>**.

23       **2.    <u>Fourteenth Amendment Equal Protection</u>**[4]

24       It is clearly established law that prisoners enjoy religious freedom and equal protection

25   of the law subject to restrictions and limitations necessitated by legitimate penological

26

27       [4] Plaintiff only pled an Equal Protection Claim in Count I.

28                                        19

1    interests. *Bell v. Wolfish*, 441 U.S. 520, 545-546 (1979). The Equal Protection Clause requires

2    the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living*

3    *Center*, 473 U.S. 432, 439 (1985). It ensures that prison officials cannot discriminate against

4    particular religions; but, must afford each prisoner "a reasonable opportunity of pursuing his

5    faith comparable to the opportunity afforded fellow prisoners who adhere to conventional

6    religious precepts." *Cruz v. Beto*, 405 U.S. 319, 321-322 (1972) (per curiam).

7           In order to state a viable Equal Protection claim, Plaintiff "must show that the

8    defendant acted with an intent or purpose to discriminate against him based upon his

9    membership in a protected class." *Serrano v. Francis*, 345 F.3d 1971, 1982 (9th Cir. 2003)

10   (citing *Barren v. Harrington*, 132 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional

11   discrimination means that a defendant acted at least in part *because of* a plaintiff's protected

12   status." *Id.* (citing *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis

13   in original).

14          Defendants contend the "*Turner* factors of interests in security, budget restrictions,

15   and staffing limitations, as discussed in the context of Plaintiff's Free Exercise claim, are

16   equally valid and applicable to his Equal Protection claim." (Doc. #7 at 19). Defendants'

17   *Turner* analysis, however, does not specifically address Defendants' decision to deny Plaintiff's

18   request for December Ramadan meals (except to the extent it is implicit that it was denied

19   because NOI is not a recognized religion) or the late delivery of the pre-dawn traditional

20   Ramadan meals; but, rather addresses the decision not to allow NOI separate services "and

21   other accommodations."

22          As previously stated, under established law, prison authorities must generally

23   accommodate the rights of prisoners to receive a diet consistent with their religious beliefs

24   and may only curtail that right in order to achieve legitimate correctional goals or to maintain

25   prison security. Construing the facts in the light most favorable to Plaintiff, if Defendants

26   denied Plaintiff a reasonable opportunity of pursuing his faith (sincerely held religious beliefs)

27   comparable to the opportunity afforded fellow prisoners who adhere to conventional religious

28                                                  20

precepts, then there was palpable discrimination by Defendants against Plaintiff. *Cruz*, 405 U.S. at 322. With respect to the denial of Ramadan meals, Defendants basically admit the denial was solely based on their decision that NOI is not a religion; thus, the decision was based on Plaintiff's religious beliefs (despite the circular argument that NOI is not a religion; therefore, Plaintiff's beliefs are not religious). If Plaintiff's beliefs are sincerely held religious beliefs, they are protected under both the First and Fourteenth Amendments.

As previously stated, not every religious sect or group within a prison must have identical facilities or personnel; but, a reasonable opportunity must be afforded to *all prisoners* to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments without fear of penalty. *Cruz*, 405 U.S. at 322. Thus, although Defendants may not recognize NOI as a religion, if in fact Plaintiff's NOI beliefs are sincerely held religious beliefs, they are nevertheless protected under the First and Fourteenth Amendments and Defendants must afford Plaintiff the opportunity to exercise those sincerely held *religious beliefs* comparable to that afforded prisoners adhering to conventional religions unless they have a *legitimate penological interest* for burdening those beliefs.

There is no evidence in the record showing Defendants considered whether Plaintiff's beliefs regarding the December Ramadan meals and the late pre-dawn traditional Ramadan meals were sincerely held religious beliefs, and although they contend they afforded Plaintiff a reasonable opportunity to exercise his religious beliefs because he could worship with traditional Islamic groups, the record indicates Defendants simply denied Plaintiff's requests for special religious accommodation solely because they were associated with NOI and Defendants do not recognize NOI as a "religion." Thus, viewing the facts in the light most favorable to Plaintiff, he has sufficiently stated a viable Equal Protection claim with respect to the Ramadan meals and the law was clearly established at the time of the alleged conduct. Accordingly, Defendants' request for summary judgment on qualified immunity grounds with respect to the Ramadan meals should be **<u>DENIED</u>**.

For the same reasons set forth *supra* under the First Amendment analysis, the law was not clearly established with respect to denying Plaintiff's application to recognize NOI as a religion and, therefore, Defendants' request for summary judgment on qualified immunity grounds with respect to Plaintiff's application to recognize NOI as a religion should be **GRANTED**.

### **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **GRANTING in part** and **DENYING in part** Defendants' Motion to Dismiss (Doc. #7) as follows:

1) Defendants' request to dismiss Plaintiff's complaint on grounds of mootness should be **DENIED**.

2) Defendants' request to dismiss Plaintiff's First Amendment claim dealing with the denial of his Religious Faith Group Recognized Application on grounds that Plaintiff failed to exhaust his administrative remedies should be **DENIED**.

3) Defendants' request to dismiss Defendants in their official capacities on Eleventh Amendment immunity grounds should be **DENIED**.

4) Defendants' request to dismiss Defendants Whorton, Cox, Baca, Wallace, Neven and Cassaleggio for lack of personal participation should be **DENIED**.

5) Defendants' request to dismiss Defendants Skolnik and McDaniel for lack of personal participation should be **GRANTED**.

6) Defendants' request for summary judgment on Plaintiff's First Amendment claim on qualified immunity grounds with respect to the Ramadan meals should be **DENIED**.

7) Defendants' request for summary judgment on Plaintiff's First Amendment claim on qualified immunity grounds with respect to the denial of religious garments should be **DENIED**.

8) Defendants' request for summary judgment on Plaintiff's First Amendment claim on qualified immunity grounds with respect to the alleged disciplinary charges and transfer  should be **DENIED**.

9) Defendants' request for summary judgment on Plaintiff's First Amendment claim on qualified immunity grounds with respect to the denial of Plaintiff's application to recognize NOI as a religion should be **GRANTED**.

10) Defendants' request for summary judgment on Plaintiff's Fourteenth Amendment claim on qualified immunity grounds with respect to the Ramadan meals should be **DENIED**.

22

11)    Defendants' request for summary judgment on Plaintiff's Fourteenth Amendment claim on qualified immunity grounds with respect to the application to recognize NOI as a religion should be **GRANTED**.

The parties should be aware of the following:

1.    That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   July 24, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

23